# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) 2:24-CR-109 |
| | ) |
| CLAUDE ARMONDO LEE, | ) |
| | ) |
| Defendant. | ) |

## OMNIBUS MEMORANDUM ORDER ON PRETRIAL MOTIONS

**J. Nicholas Ranjan, United States District Judge**

Before the Court are pretrial motions filed by Defendant Claude Lee.  ECF 44; ECF 45; ECF 46.  The Court issues this omnibus order resolving the motions.

## FACTUAL & PROCEDURAL BACKGROUND

A grand jury indicted Mr. Lee for one count of possession of ammunition by a convicted felon in violation of 18 U.S.C. 922(g)(1).  ECF 3.

This charge arose from a traffic stop.  On March 21, 2024, Greentree Borough Police Department Officer Kevin Diamond was in his police vehicle in the parking lot of a hardware store on Greentree Road.  ECF 45-2, p. 2. Officer Diamond observed a BMW sedan driving south on Greentree Road.  *Id.*  According to Officer Diamond, the vehicle didn't appear to have a registration plate and the registration plate light was burnt out.  *Id.*  Officer Diamond initiated a traffic stop at 1226 Greentree Road at 8:57 p.m.  *Id.*  After Officer Diamond stopped the vehicle, he observed that despite a layer of dust covering the back of the vehicle and obscuring the plate, he was able to see the registration plate, and after running the registration, he discovered that it had expired.  *Id.*

Officer Diamond then approached the BMW on the passenger's side and "immediately smelled the odor of fresh marijuana emanating from within the vehicle."  *Id.*  Officer Diamond asked the driver (later identified as Mr. Lee) for his

driver's license. *Id.* While Mr. Lee was reaching for his driver's license, Officer Diamond observed him reaching to the lower left and remove a small white ball/object from his pocket and place it down to his left. *Id.* When Officer Diamond asked what the white object was, Mr. Lee replied that it was a receipt. *Id.* Officer Diamond instructed Mr. Lee to keep his hands on the steering wheel and not to move, and also asked him where the marijuana was. *Id.* Mr. Lee stated that the marijuana was in the driver's door. *Id.* Officer Diamond also observed rolling papers in the driver's door compartment. *Id.*

Greentree Borough Police Department Lieutenant Rannigan arrived at the scene to assist shortly after. *Id.* Mr. Lee was asked to exit the vehicle, and as he did so, he located his driver's license. *Id.* Officer Diamond patted Mr. Lee down for weapons and found none. *Id.* Lieutenant Rannigan told Officer Diamond that there was a bag of crack in the driver's door handle, after which Officer Diamond placed Mr. Lee in handcuffs and searched his pockets, finding $130 in cash, a smartphone, and other personal items. *Id.* Mr. Lee was placed in the patrol car, and Lieutenant Rannigan showed Officer Diamond the small plastic bag containing white powder "in the driver's door compartment in plain view[,]" which was the same area Officer Diamond had observed Mr. Lee place the white object earlier. *Id.*

Officer Diamond removed Mr. Lee's handcuffs and returned his personal property. *Id.* He also had the BMW towed from the scene, and then applied for a search warrant for controlled substances. *Id.* A search warrant was issued on March 22, 2024. *Id.* During that search, the ammunition at issue was found.

### DISCUSSION & ANALYSIS

**I.    Motion to suppress (ECF 45).**

To begin with, Mr. Lee seeks a *Franks* hearing and moves for suppression of evidence gained from the search of his car pursuant to the warrant. ECF 45. After careful review of the affidavit supporting the search-warrant application and the

challenged statements, the Court finds that Mr. Lee has failed to carry his burden for a *Franks* hearing and suppression.

A defendant is entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) if he makes a substantial preliminary showing that: "(1) a supporting affidavit contained a false statement (or omission) made knowingly or with reckless disregard for the truth; and (2) the false statement was material to the probable cause determination." *United States v. Darby*, 684 F. App'x 219, 221 (3d Cir. 2017); *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (stating that at a *Franks* hearing, "the defendant must ultimately prove by a preponderance of the evidence that: (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination."). Under *Franks*, the warrant is presumed to be valid. *Franks*, 438 U.S. at 171. "The defendant must prove his allegations by a substantial preliminary showing" and "cannot rest on mere conclusory allegations or a mere desire to cross-examine, but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." *United States v. Desu*, 23 F.4th 224, 234 (3d Cir. 2022) (cleaned up).

The affidavit supporting the search-warrant application stated as follows:

**Commonwealth of Pennsylvania**



**COUNTY OF ALLEGHENY**

| Docket Number (Issuing Authority): | Police Incident Number: C24-0002945 | Warrant Number: |

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**

This Affiant, Officer Kevin Diamond, has been employed with the Green Tree Borough since March 2019 as a patrolman. This affiant has been previously employed by other p starting in 2016. This affiant has experience with executing search warrants pertaining activity.

On Thursday March 21, 2024, I was stopped (marked patrol suv #1-3) in the parking lo 1081 Greentree Rd, facing Greentree Rd. I observed a black BMW sedan traveling Sou There didn't appear to be a registration plate attached to the vehicle and the registration out. A traffic stop was conducted at 1226 Greentree Rd at approximately 20:57 hours.

Once I caught up to the vehicle and stopped it, I was able to see that the BMW had PA MDC2365 attached to it. The entire rear end of the vehicle and the registration plate w dirt which obscured the plate. I submitted the registration through the MDT and found 02/24 (VIN: WBAVC93558K036398). I approached the BMW on the passenger's side smelled the odor of fresh marijuana emanating from within the vehicle. The male drive was later identified as Claude Lee. I asked Lee for his driver's license. Lee began reach looking for his driver's license. Lee began reaching to his lower left (between him and compartment). I observed what appeared to be some kind of small white ball/object in removed from his pocket and placed down to his left. I asked Lee what the white ball w a receipt. Lee was making furtive movements that appeared to be more than someone l driver's license. I then instructed Lee to keep his hands up on the steering wheel and nc waiting and speaking with Lee, I asked him where the weed was at. Lee admitted that i door (driver's door). I also observed a pack of rolling papers in the driver's door compa

I requested Lt. Rannigan to assist who arrived on scene shortly after. Lee was asked to step towards the rear. As Lee exited, he located his driver's license. I then patted Lee d negative results. At this time, Lt. Rannigan told me that there was a bag of crack in the placed Lee in handcuffs (double locked and checked for tightness). I conducted a searc located $130 cash, a smartphone and various personal items. Lee was placed into the re suv. Lt. Rannigan showed me the small clear knotted plastic containing suspected coca the driver's door compartment in plain view. This was the same area that I had observe ball earlier. I retrieved the suspected cocaine and placed it in the patrol suv.

Mr. Lee identifies three misrepresentations and material omissions from the above affidavit: (1) the plastic baggie with the suspected cocaine was not in plain view (contrasted with the affidavit, which stated that the baggie was in plain view in the driver's door compartment); (2) Mr. Lee's license plate was visible and legible (contrasted with the affidavit, which stated that the registration plate was covered in a layer of dust that obscured it); and (3) Officer Diamond failed to include the time of the stop. ECF 45, p. 9. Mr. Lee has not made a substantial preliminary showing that these alleged problems were omissions or false statements made knowingly and deliberately or with a reckless disregard for the truth, nor has he shown that they are material. The Court takes each of these three challenges, in turn.

First, Mr. Lee claims that the alleged cocaine in the driver's door compartment was not really in plain view. ECF 45, p. 10. Mr. Lee claims that "Officer Diamond entered Mr. Lee's car without consent and searched at least two areas before finding a very small plastic bag with suspected cocaine inside of the driver's side compartment, an area not visible when the driver's side door is closed." *Id.* Upon review of the dash cam footage submitted by Mr. Lee, as well as Officer Diamond's body cam and Lieutenant Rannigan's body cam, Mr. Lee has not made a substantial preliminary showing as to this alleged omission.

The dash cam footage does not contradict the affidavit. In the footage, consistent with the affidavit, Mr. Lee exits his car, is handcuffed, and then Lieutenant Rannigan and Officer Diamond begin to look through the car windows and windshield with flashlights. Ex. B, 10:02-13:04. Both Lieutenant Rannigan and Officer Diamond are then seen looking through the windshield at the same spot. *Id.* at 13:05-13:24. All of this is consistent with Officer Diamond's statement in the affidavit that after Mr. Lee was placed in the patrol car, Lieutenant Rannigan showed him "the small clear knotted plastic containing suspected cocaine/white powder in the driver's door compartment in plain view." ECF 45-2, p. 2.

The body cam footage is also consistent with the affidavit and the dash cam footage. In the body cam footage (which has audio), Lieutenant Rannigan told Officer Diamond there was crack in the door. Ex. 1 at 11:05-11:12; Ex. 2 at 4:14-4:30. Lieutenant Rannigan and Officer Diamond then begin discussing the location of the suspected crack and looking through the car windows. While the crack itself isn't in the footage, it is clear from the footage that Lieutenant Rannigan and Officer Diamond identified the suspected crack in plain view; and nothing in the footage suggests otherwise. Ex. 1 at 12:40-13:20; Ex. 2 at 4:31-5:00. This footage accurately reflects what Officer Diamond stated in the affidavit. ECF 45-2, p. 2. Indeed, it is only after Lieutenant Rannigan and Officer Diamond are shown in the footage discussing the location of the suspected crack and observing it through the car windows that Officer Diamond opens the car door to get Mr. Lee's keys. *Id.* Based on the above evidence, Mr. Lee has not made a substantial preliminary showing that the suspected crack was not in plain view.

Second, Mr. Lee claims that Officer Diamond omitted the fact that he could see Mr. Lee's license plate. ECF 45, p. 10. But Mr. Lee has not proffered any materials that contradict the affidavit. In Mr. Lee's video exhibit, Officer Diamond's dash cam shows Mr. Lee's vehicle pass Officer Diamond, and then shows Officer Diamond pulling out onto the road to follow Mr. Lee. Ex. B, 00:14-00:30. Once Officer Diamond catches up to Mr. Lee, his license plate is not visible at first, and once it becomes visible, it only becomes legible once Mr. Lee is stopped and Officer Diamond stops a few feet behind him. Ex. B, 1:20-1:38. This video evidence does not contradict the affidavit. In the affidavit, Officer Diamond never stated that he could never see the plate; rather, he stated that he could not see Mr. Lee's license plate until he "caught up to the vehicle and stopped it[.]" ECF 45-2, p. 2. The dash cam footage is consistent with Officer Diamond's statements in the affidavit. Further, the images from the dash cam footage and both Mr. Lee's and Officer Diamond's statements in the body

cam footage clearly establish that the license plate was filthy and covered in dirt.[1] So Mr. Lee has not met his burden of making a substantial preliminary showing as to this alleged omission.[2]

Third, Mr. Lee argues that Officer Diamond omitted the time from the affidavit. Mr. Lee argues that "the fact that it was almost 9:00 p.m. and dark outside is a material omission" because "[a] reasonable judge would like to know such information when assessing what the officers could have reasonably seen during their interaction with Mr. Lee and his vehicle." ECF 45, p. 10. But this argument is plainly contradicted by the affidavit, which states that the traffic stop was conducted "at approximately 20:57 hours [*i.e.*, 8:57 p.m.]." ECF 45-2. There is no omission here, let alone a material one.

Even if Mr. Lee had successfully identified a material omission or false statement, he is still not entitled to a *Franks* hearing. "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required[.]" *Franks*, 438 U.S. at 171-72.

Here, the affidavit states that Officer Diamond "immediately smelled the odor of fresh marijuana emanating from within the vehicle" when he approached the vehicle. ECF 45-2, p. 2. "It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006). Mr. Lee

---

[1] On the body cam footage, after Mr. Lee exits his car, Officer Diamond asks Mr. Lee: "Do you see your plate now?" and Mr. Lee responds: "Ah, alright." Ex. 1, 10:15-10:20.

[2] All of this isn't to say that the dash cam and body cam footage is controlling as to what happened. But for the Court to hold a *Franks* hearing, Mr. Lee has to present evidence to contradict the affidavit. To the extent that the video footage is being proffered as such evidence, the Court finds that none of the footage contradicts the affidavit.

also admitted that he had marijuana in the driver's door compartment of his car. ECF 45-2, p. 2. Officer Diamond's observation of the smell of marijuana, and Mr. Lee's admission, supports a finding of probable cause, so the warrant affidavit (which asked for a warrant for controlled substances) is not invalid even excluding the alleged omissions and false statements.

Because Mr. Lee failed to identify a material omission or misstatement and because the affidavit contains an independent source of probable cause, the Court **DENIES** Mr. Lee's request for a *Franks* hearing and his motion to suppress.

## II. Motion to preserve rough notes (ECF 44).

Mr. Lee requests that the Court order the government to preserve "all rough notes and writings which are arguably producible to the defense pursuant to 18 U.S.C. § 3500, Federal Rule of Criminal Procedure 26.2, and *Brady v. Maryland*, 373 U.S. 83 (1963); or which may be used by the defense for impeachment purposes (including materials to assist in cross-examination pursuant to Federal Rule of Evidence 806); or which notes and writings were made during the investigation, whether or not the contents of the notes or writings are incorporated in official records, reports, and/or memoranda." ECF 44, p. 3. The government has no objection to an order that reaffirms its obligation to preserve its agents' rough notes created during the investigation. ECF 48, p. 15. However, the government points out that this case began as a state investigation, and Officer Diamond's rough notes have been destroyed. *Id.* Accordingly, the Court **GRANTS** Mr. Lee's motion and **ORDERS** that the government preserve the rough notes of the federal agents involved in the investigation.

## III. Motion for early notice of Rule 404(b) and Rule 609 evidence (ECF 46).

Mr. Lee requests an order requiring the government to produce any Rule 404(b) and Rule 609 evidence 30 days before trial. ECF 46, p. 1. Disclosure of these materials two weeks before trial generally amounts to reasonable notice of the

government's intent to use this kind of evidence. *United States v. Craig*, No. 21-338, 2024 WL 449386, at *5 (W.D. Pa. Feb. 6, 2024) (Conti, J.); *United States v. Brown*, No. 21-13, 2023 WL 1067540, at *5 (W.D. Pa. Jan. 27, 2023) (Horan, J.). Here, because of the simplicity of the case, the government states that one to two weeks' notice is reasonable (ECF 48, p. 15), and the Court agrees. As such, the Court **GRANTS** the motion and will order the government to produce these materials two weeks before trial in its pretrial order.

********************

DATE:  April 21, 2025                              BY THE COURT:

                                                   /s/ *J. Nicholas Ranjan*
                                                   United States District Judge